# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| **MARK LETART, individually, and on behalf of all others similarly situated,** | |
| *Plaintiffs*, | |
| v. | |
| **UNION CARBIDE CORPORATION,** | **Civil Action No. 2:19-cv-00877** |
| *Defendant*. | **Judge Joseph R. Goodwin** |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Union Carbide Corporation ("UCC") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. UCC's Motion to Dismiss is filed simultaneously with its Motion to Strike Plaintiff's Class Allegations pursuant to Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) of the Federal Rules of Civil Procedure.

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

COMPLAINT ALLEGATIONS ............................................................................................... 3

MOTION TO DISMISS STANDARD...................................................................................... 4

ARGUMENT............................................................................................................................... 5

    I.    Plaintiff's Three Traditional Tort Claims (Negligence ,Willful And Wanton Conduct, And Strict Liability) Should Be Dismissed Because Increased Risk Of Disease Is Not A Cognizable Injury Under West Virginia Law .................................................................................................. 5

    II.    Plaintiff's Complaint Fails To State A Facially Plausible Claim To Relief. .......... 7

        A.    The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Negligence Claim................................................................ 7

        B.    The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Willful And Wanton Conduct Claim. ................................ 8

        C.    The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Strict Liability Claim Under The Ultrahazardous Activity Standard. ....................................................................................... 9

        D.    The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Medical Monitoring Claim. .............................................. 10

            (1)    Plaintiff Fails To Plead Sufficient Facts Under *Iqbal* & *Twombly* To Satisfy *Bower*'s Elements One, Two, Four, Five, And Six ................................................................................ 10

            (2)    Each of Plaintiff's Allegations Of Underlying Tort Liability, Necessary To Satisfy *Bower*'s Element Three, Fail ............................................................................................. 13

CONCLUSION.......................................................................................................................... 14

**INTRODUCTION**

It is hornbook law that in order to state a claim for relief, a plaintiff must allege an injury. Here, Plaintiff has not alleged any legally cognizable injury. Accordingly, Plaintiff's First Amended Class Action Complaint ("Complaint" or "Compl.") should be dismissed in its entirety.

This putative class action lawsuit concerns the operations of a manufacturing facility located near Institute, West Virginia (the "Plant"). Compl. ¶ 1, ECF No. 27. The Complaint asserts four tort claims based on alleged exposure to ethylene oxide ("EtO") purportedly emitted by the Plant. *Id.* ¶ 1. All four claims are tied to one alleged "injury": an allegedly increased risk of developing cancer. *Id.* ¶¶ 45, 75, 82, 87. That sort of broad-based, amorphous allegation is patently insufficient to state a claim under either West Virginia law or federal pleading standards.

With respect to Plaintiff's three traditional tort claims—negligence, willful and wanton conduct, and strict liability—the only "injury" Plaintiff alleges is the risk of developing cancer. *Id.* ¶¶ 45, 75, 82. However, an unbroken line of cases in this Court and in the Fourth Circuit hold that a plaintiff fails to adequately plead injury, and thus fails to state a claim upon which relief can be granted, where: (1) the plaintiff does not assert that he *currently* suffers from any illness or disease, and (2) the plaintiff does not plausibly assert that he will be subject to *reasonably certain* future injuries. Thus, all three of the traditional tort claims should be dismissed.

Additionally, each of Plaintiff's claims fails because Plaintiff's allegations consist of nothing more than conclusory statements that merely recite the elements of each respective cause of action. For example, in support of his negligence claim, Plaintiff generically alleges that UCC owed him duties (*see id.* ¶¶ 65, 86) and that UCC failed to carry out those purported duties (*see*

*id.* ¶¶ 69, 87)—but Plaintiff alleges *no facts* to support these conclusory allegations. Similarly, Plaintiff's medical monitoring claim merely parrots—almost verbatim—the elements for a medical monitoring claim under West Virginia law without any *factual* allegations to support its naked legal conclusions. In particular, while Plaintiff has made small, cosmetic changes throughout, his Amended Complaint still fails to identify any *specific* disease that Plaintiff is at an allegedly increased risk of contracting and, instead, merely lists a variety of common cancers that Plaintiff claims he may one day develop. Moreover, Plaintiff fails to identify any specific monitoring procedures that he believes are now necessary, nor does he allege that such procedures would not otherwise be prescribed absent his alleged exposure. These pleading deficiencies require dismissal of the Complaint in its entirety, as threadbare recitations do not support viable causes of action under West Virginia law or U.S. Supreme Court precedent.[1]

## PROCEDURAL HISTORY

Plaintiff filed his initial complaint on December 6, 2019. *See* ECF No. 1. After receiving an extension of time to respond to Plaintiff's initial complaint, Defendant filed a Motion to Dismiss and a Motion to Strike Class Allegations on February 7, 2020. On March 6, 2020, in lieu of opposing Defendant's motions, Plaintiff filed a motion for leave to file an amended complaint, in which he, *inter alia*, withdrew his public nuisance claim as well as his request for punitive damages. This Court granted Plaintiff's motion for leave on March 12, 2020, and Plaintiff filed the now-operative Complaint later that same day.

---

[1] If the Court does not dismiss the entire Complaint, UCC alternatively moves, as set forth in its concurrently filed Motion to Strike Plaintiff's Class Allegations, that this Court strike Plaintiff's class allegations, as it is clear from the face of Plaintiff's Complaint that he will not be able to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure.

## COMPLAINT ALLEGATIONS

Plaintiff asserts four tort claims in his Complaint: (1) negligence; (2) ultrahazardous activity/strict liability; (3) medical monitoring; and (4) willful and wanton conduct. Compl. ¶¶ 64-88. Plaintiff bases each claim on the allegation that UCC is responsible for exposing Plaintiff to EtO purportedly emitted from the Plant, causing Plaintiff to suffer an increased risk of developing one or more forms of cancer. *Id.* ¶¶ 1, 5-6. The Complaint seeks damages to fund a medical monitoring program, unspecified injunctive and declaratory relief, and attorneys' fees, costs, litigation expenses, and prejudgment interest. *Id.* at 18-19.

Plaintiff alleges in Count I that UCC committed negligence, stating that "Defendant owed Plaintiff and Class Members a duty to operate its [Plant] in a manner which would not cause Plaintiff and Class Members injury or harm" and that, as a result of UCC's alleged breach of this duty, "Plaintiff and Class Members have suffered and will continue to suffer harm, including health detriments . . . that have occurred or are reasonably certain to occur." *Id.* ¶¶ 65, 70. Plaintiff claims that this alleged negligence resulted in an "increase [in] nearby residents' (including Plaintiff' [sic] and the Class' [sic]) likelihood and risks of developing cancer." *Id.* ¶ 68.

In Count IV, Plaintiff asserts a claim of "willful and wanton conduct" and repeats, nearly verbatim, the allegations supporting his negligence claim. *Id.* ¶¶ 85-88; *compare* ¶ 69 *with* ¶ 87. Plaintiff claims, for example, that UCC breached its "duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health . . . of Plaintiff." *Id.* ¶ 86. Plaintiff claims that this alleged willful and wanton conduct caused Plaintiff and Class Members "to suffer harm, including health detriments . . . that have occurred or are reasonably certain to occur." *Id.* ¶ 88.

In Count II, Plaintiff asserts a claim of ultrahazardous activity/strict liability. *Id.* ¶¶ 71-78. Plaintiff claims that UCC's alleged conduct "constitutes an ultrahazardous activity" and that "[t]he activities conducted by Defendant are exceedingly dangerous and offer little or no value to the surrounding community." *Id.* ¶¶ 72, 76. Plaintiff again claims that the alleged ultrahazardous activity caused Plaintiff and putative class members "to suffer harm, including health detriments . . . that have occurred or are reasonably certain to occur." *Id.* ¶ 78.

Finally, Plaintiff asserts a medical monitoring claim in Count III. *Id.* ¶¶ 79-84. In support of this cause of action, Plaintiff claims that exposure to alleged EtO emissions gives him and members of the putative class "a significantly increased risk of contracting cancer . . . mak[ing] periodic diagnostic medical examinations reasonably necessary." *Id.* ¶ 82. Plaintiff does not identify what "periodic diagnostic medical examinations" would be required for any of the forms of cancer that he alleges he is at an increased risk of contracting, nor does he make any allegations regarding the availability of such procedures or whether they would be prescribed absent his alleged exposure to EtO.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Supreme Court in *Iqbal* set out a two-step process to determine if a claim has "facial plausibility." *Iqbal*, 556 U.S. at 678-79. The first step is to identify and separate out the bare legal conclusions unsupported by factual allegations, which are "not entitled to the assumption of

4

truth." *Id.* at 679; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The second step is to determine the plausibility of the factual allegations that remain for each claim after the legal conclusions are disregarded. *Iqbal*, 556 U.S. at 678-79. Naked assertions are not enough; to achieve facial plausibility, a complaint must include "factual content" sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In other words, a complaint must contain enough facts to "nudge[ a] claim[ ] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017). Accordingly, a complaint can only survive a motion to dismiss on the basis of its factual allegations, not its legal conclusions.

## ARGUMENT

I. **Plaintiff's Three Traditional Tort Claims (Negligence, Willful And Wanton Conduct, And Strict Liability) Should Be Dismissed Because Increased Risk Of Disease Is Not A Cognizable Injury Under West Virginia Law**.

All three of Plaintiff's traditional tort claims (negligence, willful and wanton conduct, and strict liability) should be dismissed because the only injury Plaintiff asserts in this action is "an increased risk of developing cancer," Compl. ¶ 45, which is not a cognizable injury under West Virginia law.

To adequately plead injury, a plaintiff "must produce evidence of a detrimental effect to the plaintiff's health *that actually has occurred* or is *reasonably certain to occur* due to a present harm." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 95 (4th Cir. 2011) [hereinafter *Rhodes II*] (emphasis added). Here, Plaintiff has conceded that he does not actually have cancer. Compl. ¶ 53. And, this Court has recently held that an allegation of an increased risk of

5

developing cancer does not satisfy the injury requirement for a tort claim. *Barker v. Naik*, No. 2:17-CV-04387, 2018 WL 3824376 (S.D.W. Va. Aug. 10, 2018).

In the 2018 medical monitoring case *Barker v. Naik*, this Court dismissed a variety of tort claims (including negligence and gross negligence, among others) on, *inter alia*, the grounds that the plaintiffs had not adequately alleged any injury to support their claims. *Id*. In *Barker*, the plaintiffs alleged they "ha[d] been significantly exposed to proven hazardous substances through the tortious conduct of the Defendants" and that "these exposures … significantly increased [the plaintiffs'] risk of contracting one or more diseases, including but not limited to cancer." *Id.* at *5. This Court held that the allegations failed to state a claim because they did not "assert that [the plaintiffs] currently suffer from any illness or diseases caused by their exposure or that they will be subject to 'reasonably certain' future injuries." *Id*. at *3 (quoting *Rhodes II*, 636 F.3d at 95).[2]

*Barker* applied the Fourth Circuit's holding in *Rhodes II*—an analogous medical monitoring case—that an "increased risk of disease" does not satisfy the injury requirement. *Rhodes II*, 636 F.3d at 95 (holding that "[t]he presence of [a chemical] in the public water supply or in the plaintiffs' blood does not, standing alone, establish harm or injury for purposes of proving a negligence claim under West Virginia law"); *see also Calihan v. Surnaik*, No. 2:17-cv-04386, 2018 WL 6313012, at *2 (S.D.W. Va. Dec. 3, 2018) (determining "Plaintiffs' alleged future injury is *insufficiently* pled" where "the *bulk* of the damages… appear[s] to stem from alleged *future* injury they will suffer because of the potential for contracting serious latent

---

[2] Plaintiff may argue that the Complaint, as amended, satisfies the injury requirement because it alleges that "Plaintiff and Class Members have suffered and will continue to suffer harm, including health detriments . . . that have occurred or are reasonably certain to occur." *Id.* ¶¶ 65, 70. However, this naked allegation is precisely the type of conclusory, threadbare recital of the elements of a cause of action that should be disregarded by the Court because it is unsupported by any actual fact allegations.

disease" (internal quotation marks omitted) (emphasis added)). "[A]lleged… contamination alone, without any evidence of physical harm, is not an injury at all" and a "risk [of disease]" does not satisfy "traditional [tort] requisite injury." *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 769-770 n.17 (S.D. W. Va. 2009) [hereinafter *Rhodes I*].

Because injury is a required element for each of Plaintiff's traditional tort claims, where Plaintiff alleges no current injury, as here, he fails to adequately state a claim and his traditional tort claims of negligence, willful and wanton conduct, and strict liability all fail.

## II. <u>Plaintiff's Complaint Fails To State A Facially Plausible Claim To Relief</u>.

While Plaintiff's traditional tort claims should be dismissed on the ground that he fails to adequately plead the element of injury, *all* of his claims separately fail and should be dismissed because his allegations concerning the remaining elements of each claim consist of mere "threadbare" and "conclusory" allegations that do not meet the standards set forth by *Iqbal* and *Twombly*.

### A. The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Negligence Claim.

Under West Virginia law, a negligence claim only arises where there is "the existence of a duty owed to plaintiff by defendant, a breach of that duty, and an injury proximately resulting from that breach." *Bros. Trading Co., Inc. v. Charleston Nat'l Bank*, No. 92-2712, 1992 WL 187274, at *3 (4th Cir. Aug. 6, 1992) (citing *Puffer v. Hub Cigar Store, Inc.*, 84 S.E.2d 145, 152 (W. Va. 1954)). As discussed above, Plaintiff has failed to plead an injury to support his negligence claim. However, Plaintiff has also failed to plead a duty or a breach, which separately dooms his claim. Plaintiff only nominally addresses these elements in his Complaint by essentially repeating the elements of the cause of action. For instance, Plaintiff states without explanation that "Defendant owed … a duty to operate its [Plant] in a manner which would not

7

cause Plaintiff and Class Members injury or harm" and that "Defendant negligently breached its duty of care by [*inter alia*] releasing… EtO from its [Plant]." Compl. ¶¶ 65-66. Under *Iqbal* and *Twombly*, as applied by *Barker*, such cursory recitation of the duty and breach elements of a cause of action is insufficient to state a legal claim. *See, e.g.*, *Barker*, 2018 WL 3824376, at *1 & *3 (dismissing negligence claim in an air pollution case for failure to allege more than "threadbare" and "conclusory" allegations). On this additional ground, Plaintiff's allegations of negligence fail.

### B. The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Willful And Wanton Conduct Claim.

In order to adequately state a claim for willful and wanton conduct under West Virginia law, a plaintiff must adequately set forth the three elements of a negligence claim—duty, breach, and injury—as well as plausibly allege that a defendant "was conscious of [its] conduct, and conscious… that injury would likely or probably result from [its] conduct, and that with reckless indifference to consequences [it] consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result." *Stone v. Rudolph*, 32 S.E.2d 742, 749-50 (W. Va. 1944); *see also Rhodes I*, 657 F. Supp. 2d at 762-63. As this Court held in *Barker*, where a plaintiff fails to adequately allege negligence, he necessarily fails to allege claims with a higher standard than negligence, such as willful and wanton conduct. *See Barker*, 2018 WL 3824376, at *4 ("as the Court has found that Plaintiffs have failed to sufficiently state a claim for negligence, the Court cannot find that Plaintiffs have alleged sufficient facts to state a claim under the higher standard of gross negligence").

Additionally, Plaintiff's Complaint is devoid of any factual allegations that would allow the Court to reasonably conclude that UCC had the heightened awareness required for a claim of

8

willful and wanton conduct. Thus, Plaintiff's willful and wanton claim would fail even had he adequately pled the elements of a standard negligence claim.

### C. The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Strict Liability Claim Under The Ultrahazardous Activity Standard.

Like Plaintiff's negligence and willful and wanton conduct allegations, his strict liability allegations merely consist of conclusory recitations of the legal elements of the claim. For the strict liability claim, however, his Complaint does not even recite all the required factors the Court must consider in determining the viability of such claims. In determining whether activities are abnormally dangerous and thereby subject to strict liability, West Virginia has explicitly adopted the Restatement (Second) of Torts § 520 six-factor balancing test:

> a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> b) likelihood that the harm that results from it will be great;
> c) inability to eliminate the risk by the exercise of reasonable care;
> d) extent to which the activity is not a matter of common usage;
> e) inappropriateness of the activity to the place where it is carried on; and
> f) extent to which its value to the community is outweighed by its dangerous attributes.

*In re Flood Litig.*, 607 S.E.2d 863, 874 (W. Va. 2004).

As discussed above, Plaintiff fails to allege any injury to support his strict liability claim. Additionally, Plaintiff only purports to address some of the remaining elements, and, even then, he merely parrots the language of the Restatement. The Complaint alleges that UCC has caused a "high degree of risk," Compl. ¶ 75, "that emissions of EtO will result in life-threatening cancer," *Id.* ¶ 74, that "it was completely inappropriate for Defendant to locate and operate their [Plant] in a populated area," *Id.* ¶ 74, and that the "exceedingly dangerous" activities allegedly undertaken by UCC "offer little or no value…." *Id.* ¶ 76. These are the types of "labels and conclusions, and… formulaic recitation[s] of the elements of a cause of action" that the United

9

States Supreme Court has deemed insufficient. *See Twombly*, 550 U.S. at 555. Once these legal conclusions and unsupported allegations are eliminated, the remainder of the strict liability allegations do not establish a factual basis for liability. For example, Plaintiff fails to set forth any facts that address whether it is possible for UCC to eliminate the alleged risk of harm through the exercise of reasonable care or whether UCC's alleged activity is common throughout the region. Without having pled a single fact that addresses these factors, and otherwise only having pled legal conclusions devoid of factual content, Plaintiff's strict liability claim does not have the facial plausibility *Iqbal* and *Twombly* require.

### D. The Factual Allegations In Plaintiff's Complaint Are Insufficient To Support A Medical Monitoring Claim.

#### (1) Plaintiff Fails To Plead Sufficient Facts Under *Iqbal* & *Twombly* To Satisfy *Bower'*s Elements One, Two, Four, Five, And Six.

Plaintiff's medical monitoring claim should be dismissed because it consists of nothing more than conclusory allegations that are insufficient to defeat a motion to dismiss. Indeed, as to at least three required elements of the claim, Plaintiff fails to plead *any* facts, much less plausible ones.

In order to succeed on a claim for medical monitoring under West Virginia law, a plaintiff must prove six separate elements:

> (1) he or she has, relative to the general population, been significantly exposed;
> (2) to a proven hazardous substance;
> (3) through the tortious conduct of the defendant;
> (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease;
> (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and
> (6) monitoring procedures exist that make the early detection of a disease possible.

10

*Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999). As a threshold matter, Plaintiff's Complaint fails to allege any *specific* disease or diseases for which he seeks monitoring, which is a required element under *Bower*. *See id.* (requiring evidence of "a significantly increased risk of contracting a *particular* disease relative to what would be the case in the absence of exposure") (emphasis added). Applying the *Bower* precedent, this Court made plain in *Barker* that merely alleging an increased risk of developing "cancer" is not the sort of identification of a particular disease that *Bower* requires. *Barker*, 2018 WL 3824376, at *5. Rather, this Court branded plaintiffs' allegations in *Barker* "conclusory" and, as a result, dismissed the medical monitoring claim, holding that the plaintiffs did "not even come close to sufficiently alleging the appropriate facts as required under the dictates of *Twombly* and *Iqbal*." *Id*.

Like the plaintiffs in *Barker*, Plaintiff here fails to specify any *particular* diseases allegedly at issue in this case and, instead, merely alleges that he faces an increased risk of "contracting cancer." Compl. ¶ 82. While Plaintiff lists a variety of common cancers that he supposedly faces an increased risk of contracting (such as "leukemia" and "breast cancer"), this Court made clear in *Barker* that such an amorphous and conclusory allegation is plainly insufficient to plead a medical monitoring claim.

Additionally, this Court held in *Barker* that a complaint fails to adequately allege the required elements of medical monitoring where it does nothing more than recite the elements of the cause of action. *Barker*, 2018 WL 3824376, at *5 ("Here, Plaintiffs' allegations mirror the factors set forth by the *Bower* Court but fail to allege any facts in support of these elements, only making conclusory statements which are insufficient to sustain this claim."). In *Barker*, the complaint alleged that the plaintiffs "ha[d] been significantly exposed to proven hazardous

11

substances through the tortious conduct of the Defendants" and that, as a result of those exposures, "have or will have a significantly increased risk of contracting one or more diseases, including but not limited to cancer." *Id*. As stated above, this Court dismissed the medical monitoring claim in *Barker* because the "[p]laintiffs' conclusory allegations [did] not even come close to sufficiently alleging the appropriate facts [to support the elements of the cause of action,] as required under the dictates of *Twombly* and *Iqbal*." *Id.* The result in *Barker* is consistent with *Iqbal* and *Twombly*, which dictate that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly,* 550 U.S. at 555.

The allegations here fare no better than those in *Barker*. With regard to the first element, Plaintiff has offered nothing more than vague descriptions of his alleged exposure to EtO, and he has offered *zero* factual basis to support a finding that such exposure is significantly greater than that experienced by the general population. Plaintiff has set forth no facts regarding the amount of exposure he experienced, what level of exposure constitutes a significant departure from the general population, and whether Plaintiff's alleged exposure exceeds this level.

With respect to the second element, Plaintiff again has offered no factual basis for his allegation, but instead simply parrots the words of the element, *i.e.*, that the substance he refers to is a "dangerous toxin," Compl. ¶ 80, without specifically tying any of UCC's allegedly tortious conduct to his purported exposure.

*Bower* element five requires evidence that "the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure." *Bower*, 522 S.E.2d at 432. Plaintiff effectively cuts and pastes this language into his Complaint, without identifying

12

the specific medical examinations allegedly necessitated by the alleged disease risk here, or how those unspecified examinations are different from examinations that would normally be prescribed. *See* Compl. ¶ 83 ("These monitoring procedures are different than that normally recommended in the absence of toxic exposures and are reasonably necessary due to Plaintiff's and Class Members' exposures to EtO.").

Similarly, *Bower* element six requires evidence that "monitoring procedures exist that make the early detection of a disease possible." *Bower*, 522 S.E.2d at 432-33. Plaintiff again does nothing but track this language in his Complaint, failing to specify any monitoring procedures that allegedly exist to detect any of the types of cancers listed in the Complaint. *See* Compl. ¶ 83 ("Monitoring procedures exist that makes early detection of these cancers possible and beneficial.").

When the Court disregards the legal conclusions, as it should under *Iqbal*, nothing remains as to *Bower* elements one, two, four, five, and six. "[B]are assertions 'devoid of further factual enhancement'… are insufficient as a matter of law to demonstrate [Plaintiff's] entitlement to relief." *Nemet Chevrolet*, 591 F.3d at 260 (quoting *Iqbal*, 556 U.S. at 678).

> **(2)** **Each of Plaintiff's Allegations Of Underlying Tort Liability, Necessary To Satisfy *Bower*'s Element Three, Fail**.

Under the third element of the *Bower* test, Plaintiff is required to establish that UCC has independently committed an underlying tort so as to warrant a medical monitoring claim. *Bower*, 522 S.E.2d at 433. Plaintiff's several theories of traditional tort liability (negligence, willful and wanton conduct, and strict liability for ultrahazardous activity) all fail to satisfy this element because, as set forth above, in each instance the factual allegations set forth by Plaintiff in his Complaint do not give rise to these torts under West Virginia law. *See supra* pp. 7-10. Because Plaintiff's Complaint fails to set forth underlying tort liability to support the third

13

element of a medical monitoring claim under *Bower*, for this separate reason, this Court should dismiss Plaintiff's medical monitoring claim.

## CONCLUSION

For the foregoing reasons, Defendant UCC respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated:  March 26, 2020.

        Respectfully submitted,

        */s/Patricia M. Bello*
        R. SCOTT MASTERSON (WVSB #10730)
        PATRICIA M. BELLO (WVSB # 11500)
        LEWIS BRISBOIS BISGAARD & SMITH LLP
        707 VIRGINIA STREET EAST
        SUITE 1400
        CHARLESTON, WV 25301
        Tel:  304-553-0166
        Scott.masterson@lewisbrisbois.com
        Patricia.Bello@lewisbrisbois.com

        *and*

        JOHN L. EWALD
        (NYSB # 4227930) *pro hac vice*
        KRISTEN FOURNIER
        (NYSB # 4439857) *pro hac vice*
        ALVIN LEE
        (NYSB # 4829545) *pro hac vice*
        KING & SPALDING LLP
        1185 6TH AVENUE
        NEW YORK, NY 10036
        Tel:  212-556-2100
        jewald@kslaw.com
        kfournier@kslaw.com
        alvin.lee@kslaw.com

        *Counsel for Union Carbide Corporation*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| **MARK LETART, individually, and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**UNION CARBIDE CORPORATION,**<br><br>*Defendant*. | **Civil Action No. 2:19-cv-00877**<br><br>**Judge Joseph R. Goodwin** |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 26th day of March, 2020 the foregoing "Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint" was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to, and constitutes service on counsel of record.

*/s/Patricia M. Bello*
Patricia M. Bello (WV Bar #11500)
LEWIS BRISBOIS BISGAARD & SMITH LLP
707 Virginia Street, E., Suite 1400
Charleston, West Virginia 25301
(304) 553-0166/(304)932-0265 (fax)
Patricia.bello@lewisbrisbois.com